Eastern District of Kentucky
FILED
OCT 28 2019
AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 17-7-HRW

DANNY RAY HENSLEY,
*Administrator of the Estate of Danny Oscar Hensley*,　　　　　　　　　　PLAINTIFF,

v.　　　　**MEMORANDUM OPINION AND ORDER**

HEATHER BOSSIO, *et al*,　　　　　　　　　　DEFENDANTS.

This matter is before the Court upon Defendant Charles Wilkerson's Motion for Summary Judgment [Docket No. 52]. The matter has been fully briefed by the parties [Docket Nos. 54 and 55]. For the reasons set forth herein, the Court finds that Defendant Charles Wilkerson is entitled to judgment as a matter of law.

I.

Danny Oscar Hensley died while he was incarcerated at the Little Sandy Correctional Complex ("LSCC"). He was beaten, sexually assaulted and strangled to death by another inmate, Randy Bowman.

On the day of the murder, Bowman and Hensley entered Bowman's cell on the second floor of the dorm, in violation of the LSCC's rules. [Amended Complaint, Docket No. 25 at ¶ 43 and Deposition of Heather Bossio, Docket No. 54-5, p. 56]. Also in violation of LSCC's rules, after entering Bowman's cell, one of them placed a towel over most of the cell door window. *Id.* at ¶ 45.

1

At some point while they were in Bowman's cell, Bowman assaulted Hensley. He caused numerous cuts to Hensley's head and face, and ultimately, Bowman strangled him. *Id.* at ¶ 53.

Eventually, Bowman told Defendant Derek Maggard, a corrections officer, that an inmate was dead in his cell. In response, Maggard and another corrections officer, Defendant Andrew Hayes, went to Bowman's cell. *Id.* at ¶ 70. When Maggard and Hayes arrived at the cell, Hensley was lying naked, face down on the cell floor. *Id.* at ¶ 72. Hayes checked Hensley's pulse, but found none. *Id.* at ¶ 73. Officers transported Hensley to St. Clair Regional Medical Center, where he was pronounced dead. *Id.* at ¶ 74.

On November 28, 2016, Bowman plead guilty to the murder of Hensley and was sentenced to life in prison without the possibility of parole. *Commonwealth of Kentucky v. Bowman,* 16-CR-00037, Elliot County Circuit Court.

Danny Ray Hensley, Hensley's father, filed this action against Defendants Heather Bossio and Holly Finch. At the time of Hensley's murder, Heather Bossio was a Classification and Treatment Officer at LSCC and Holly Finch was a supervisor at LSCC. *Id.* at ¶¶ 4-5.1

The Complaint was subsequently amended, upon Plaintiff's motion, to add additional Defendants who were on duty at LSCC on the day of Hensley's murder as well as Charles Dickerson, the Prison Rape Elimination Act ("PREA") Coordinator for Kentucky Department of Corrections. *Id.* at ¶12.

There are no allegations that are specific to Wilkerson. Rather, Plaintiff alleges that all the Defendants violated Hensley's Eighth Amendment rights through deliberate indifference to a substantial risk of serious harm to Hensley, or in the alternative that he made an intentional

2

decision to place Hensley at a substantial risk of suffering serious harm. Plaintiff also alleges that the Defendants are liable in tort for Hensley's death.

Defendant Wilkerson seeks summary judgment as to all claims alleged against him.

## II.

In 1986, the United States Supreme Court set forth the standard for summary judgment in a trilogy of cases: *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), Celotex *v. Cartett*, 477 U.S. 317. 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Following this precedent and Fed.R.Civ.P. 56(c), the moving party is entitled to judgment as a matter of law when "[t]he pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact." Summary judgment is mandated against a party who has failed to establish an essential element of his or her case after adequate time for discovery. In such a situation, there is no genuine issue of material fact as the failure to prove an essential fact renders all other facts irrelevant. *Celotex v. Cartett*, 477 U.S. at 322-323.

The United States Court of Appeals for the Sixth Circuit has interpreted the United States Supreme Court's trilogy as requiring the nonmoving party to produce enough evidence, after having had a reasonable opportunity to conduct discovery, so as to withstand a directed verdict motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).

## III.

Defendant Wilkerson argues that he is immune from the claims alleged against him.

---

1 By Order entered on March 9, 2018, the undersigned overruled Defendants Bossio and Finch's Motion for Summary Judgment, finding neither Defendant was entitled to qualified immunity. [Docket No. 30].

i.

With regard to Plaintiff's Eighth Amendment claims, it is well established that "prison officials have a duty... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. A prison official violates an inmate's rights only if the official is "deliberate[ly] indifferen[t] to inmate health or safety." *Id.* (internal quotation marks omitted).

"Deliberate indifference is a stringent standard of fault." *Connick v. Thompson*, 563 U.S. 51, 61, (2011) (internal quotation marks, brackets, and citation omitted). Deliberate indifference includes an objective as well as a subjective component. *Farmer*, 511 U.S. at 834. The objective component requires Plaintiff to show that Hensley was exposed to a "substantial risk of serious harm" to his safety. *Id.* The subjective component requires proof that the individual defendants (1) were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]"; (2) actually drew the inference; and (3) consciously disregarded the risk. *Id.* at 837. Plaintiff may satisfy the subjective component through ordinary methods of proof, "including inference from circumstantial evidence[.]" *Id.* at 842.

Defendant Wilkerson does not dispute the objective component of the Eighth Amendment analysis and there is little question that Plaintiff has satisfied it.

It is the subjective component that is the focus of Wilkerson's dispositive motion. This Court must ask whether Plaintiff has presented facts which show that Wilkerson (1) subjectively perceived facts from which to infer a substantial risk of serious harm to Hensley, (2) actually

4

drew the inference that there was a substantial risk, and (3) disregarded that risk. *Id.* at 839.

Wilkerson was cast in Plaintiff's net of Defendants based upon his position as PREA Coordinator for the Kentucky Department of Corrections.2

Among the standards codified in the PREA is an assessment of each inmate with regard to their risk of being sexually abused by another inmate or being sexually abusive toward another inmate. 28 C.F.R. § 115.41. The screening is to be used by prison officials in determining housing, work and education assignments. *Id.* Among the PREA's general tenets is within "facilities with multiple housing units...[the prison] should **generally** keep vulnerable inmates in separate housing units from inmates at risk for abusiveness." (emphasis added). Notably, contrary to Plaintiff's assertion, there is no requirement under the PREA to completely separate high-risk and low-risk inmates. [Deposition of Charles Wilkerson, Docket No. 52-1, p. 17]. Although the Kentucky Department of Corrections prohibits high-risk victims from sharing a cell with high-risk abusers, there is no mandate that they be housed in separate facilities or separated within the prison's common areas. *Id.* at p. 18. Depending on the extent of supervision in any given situation, individuals from both. groups may be in the same dorm or enrolled in similar programs. *Id.*

As Defendant points out, Plaintiff appears to suggest that the Kentucky Department of

---

2 The purpose of the PREA, 42 U.S.C. § 15601, *et seq.* (2003), is to provide for the "analysis of the incidence and effects of prison rape in Federal, State and local institutions, and for information, resources, recommendations and funding to protect individuals from prison rape." The PREA accomplishes many objectives, including: presenting congressional findings on the incidence and societal consequences of prison rape; mandating the U.S. DOJ to collect statistical information on the incidence of prison rape; providing grants to aid states in creating solutions to the problem; establishing a national commission to further study the prevalence, causes and effects of prison rape; and directing the United States Attorney General to issue a rule to address and eliminate the problem of prison rape. Press Release, United States President George W. Bush, Statement on Prison Rape Elimination Act (Sept. 4, 2003), http://www.whitehouse.gov/news/releases/2003/09/20030904-9.html.

5

Corrections construct separate facilities for each group. That is not the issue before this Court. The instant motion presents the question of Wilkerson's liability for Hensley's death in his capacity as PREA Coordinator.

Wilkerson testified that he has no authority or say-so of any kind in LSCC's housing assignments. *Id.* at p. 7. Nor did he have direct authority over any personnel at LSCC. *Id.* at pp. 6, 11. In fact, he has never worked inside LSCC or any other prison. *Id.* at p. 41. He had no contact with Hensley or Bowman or knowledge of either. *Id.* at p. 69. These facts belie Plaintiff's argument that Wilkerson was "deliberately indifferent" or "subjectively aware" of any risk to Hensley.

Notwithstanding Wilkerson's tenuous, at best, connection to the facts which give rise to this civil action, Plaintiff maintains that Wilkerson's mere knowledge of the risk presented by placing high-risk victims and high-risk abusers in the same cell is tantamount to "deliberate indifference." It is not under the current law which does not require the complete separation of the two groups.

Plaintiff appears to suggest that simply by virtue of his job title, Wilkerson violated Hensley's Eighth Amendment rights. Yet, the law requires more. "Obduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference." *Gibson v. Foltz,* 963 F.2d 851, 853 (6th Cir. 1992).

There is nothing in the record that establishes that Wilkerson was required to ensure that LSCC always kept the high-risk victims and high-risk abusers apart. Not only is there no such directive, Wilkerson had no authority by which to do so. There is no triable issue in this regard.

ii.

Count 4 of the Amended Complaint alleges that all Defendants are liable in tort, under Kentucky law, for the wrongful death of Hensley. [Docket No. 25, §§ 92-96]. Wilkerson argues that he is immune from this claim.

It is a well-established principle of Kentucky law that a state officer or employee is liable for "deliberate wrongdoing, regardless of whether he was acting within the scope of his authority." *Carr v. Wright,* 423 S.W.2d 521, 522 (Ky.1968). This is based on the premise that, while a state officer or employee may be entitled to official immunity for actions authorized by law, when a state officer or employee "exceeds, ignores, or disregards the limits set to his authority, he cannot then justify his act at all, but must respond to the party injured like any other wrongdoer." *Upchurch v. Clinton County,* 330 S.W.2d 428, 431 (Ky.1959). This principle was reaffirmed by the Kentucky Supreme Court when it stated that a state officer or employee is not immune from suit when a claim alleges "illegal action or action outside the scope of authority." *Franklin County v. Malone,* 957 S.W.2d 195, 202 (Ky.1997). Therefore, a state officer or employee is not immune from suit under Kentucky law when the individual knowingly commits an intentional tort, wrongful act, or other form of deliberate wrongdoing.

The record in this case shows no intentional or illegal action by Wilkerson or any evidence that he exceeded the scope of his authority. As stated *supra* he did not supervise any personnel at LSCC nor did he have involvement in the housing assignments. As such, he is immune from this claim.

## IV.

This case is one of tragedy. At the time of his murder, Hensley was twenty-three years old and a mere seven months from being released from prison. On that day, LSCC policies were

7

ignored by both inmates, resulting in the brutal death of Hensley, right under the prison's nose. In his response to Wilkerson's dispositive motion, Plaintiff asks "who failed to stop Bowman and Hensley from being alone in a cell together"? [Docket No. 54, p. 2]. That is for a jury to ponder. However, Wilkerson is not among those who the jury may consider. His connection to Hensley's death is simply too attenuated. After what appears from the record to be lengthy and thorough discovery, Plaintiff has not shown intentional or illegal conduct by Wilkerson or any evidence that he violated Hensley's Constitutional rights.

If, after a sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* trilogy's criteria, summary judgment is appropriate.

Accordingly, **IT IS HEREBY ORDERED** Defendant Charles Wilkerson's Motion for Summary Judgment [Docket No. 52] be **SUSTAINED**.

This is an **INTERLOCUTORY** and **NON-APPEALABLE** Order.

October 28, 2015.

Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge